**SAW MILL BROADCASTERS, INC., Plaintiff,**

v.

**Dorothy MOORE, Defendant.**

**No. 82 Civ. 5228 (MEL).**

United States District Court, S.D. New York.

April 15, 1983.

Di Falco, Amhurst, Smithson, Tannenbaum & Duval, New York City, for plaintiff; Herbert T. Posner, New York City, of counsel.

Dunnington, Bartholow & Miller, New York City, for defendant; Steven E. Lewis, New York City, of counsel.

LASKER, District Judge.

In January 1981, Saw Mill Broadcasters, Inc. ("Saw Mill") entered into an agreement with Kingston Broadcasters, Inc. ("Kingston"), under which Saw Mill agreed to purchase a radio station from Kingston, and which provided for Saw Mill to lease from Kingston the premises upon which the radio station was located. The transaction contemplated by the agreement was closed in June 1981. Under the terms of the lease, Saw Mill acquired an option to purchase the realty for $150,000 upon certain conditions (Lease, Section 6(a)). Additionally, the terms of the lease gave Saw Mill a right of

first refusal to purchase the property (Lease, Section 6(b)), the relevant portion of which provides:

> "[I]f . . . Landlord desires to sell, transfer or otherwise convey any interest in the Location to a third party for consideration having a value of less than $150,000 then, . . . Tenant shall have the right to acquire the interest in the Location from Landlord on the same terms and conditions. . . . "

In November 1981 Kingston was dissolved, and its assets were distributed to the defendant, Dorothy Moore, who at the time of dissolution was Kingston's sole shareholder. Moore received a deed reciting $1.00 as consideration for the property upon which the radio station is situated.

Saw Mill brought suit against Moore seeking to void the distribution of the property to Moore, claiming that this distribution triggered Saw Mill's right of first refusal, entitling Saw Mill to purchase the property for $1.00.[1] The second count of the complaint alleges that Moore and the now dissolved Kingston conspired to deprive Saw Mill of its right of first refusal, and committed a fraudulent transfer.

The defendant moves, pursuant to Fed.R. Civ.P. 56, for summary judgment dismissing plaintiff's action. Plaintiff makes a cross-motion for summary judgment, and moves for entry of a default pursuant to Fed.R.Civ.P. 55, because of the defendant's failure to answer specifically count 2 of the complaint. Defendant requests leave to amend her answer pursuant to Fed.R.Civ.P. 15(a) in order to respond specifically to count 2. Finally, the plaintiff moves for an order pursuant to Fed.R.Civ.P. 67, granting it leave to deposit rental payments into court pending resolution of this action.

1. *Motions for Default and to Amend Answer*

▅ Saw Mill states that, since defendant has failed to respond specifically to the second count of the complaint, entry of a default as to that count is mandatory under Fed.R.Civ.P. 55(b)(2). In the instant case, the defendant timely filed an answer which responded generally to the second count of the complaint, but failed to respond specifically to it, an omission which is plainly technical. The deficiency caused no prejudice to the plaintiff. If a default were to be entered, the case would not be decided on its merits, a result not concordant with the interests of justice. For these reasons, the plaintiff's motion for entry of a default is denied. The circumstances described above also warrant granting defendant's motion to amend her answer to respond specifically to the second count of the complaint, especially since Rule 15(a) prescribes that leave to amend should be "freely given when justice so requires."

2. *Cross Motions for Summary Judgment*

▅ Moore moves for summary judgment dismissing the complaint, contending that Saw Mill's right-of-first refusal under Section 6(b) of the lease was not triggered by the distribution of title from Kingston to Moore. Saw Mill cross-moves for summary judgment, contending that the distribution triggered its right of first refusal. Each party predicates its motion on contrary interpretations of the relevant lease provisions, both of which are plausible. Because the agreement does not unambiguously support either party's interpretation, the case is not a proper one for summary judgment.[2]

---

1. Plaintiff's demand for the contested realty at the recited consideration of $1.00 is without merit. To allow the plaintiff to purchase property for $1.00 that is clearly worth a great deal more than that sum would be to construe the terms of the parties' agreement unreasonably. *Midland Container Corp. v. Sophia Realty,* 65 A.D.2d 784, 410 N.Y.S.2d 638, 640 (App.Div., 2d Dep't 1978).

2. Both parties have submitted affidavits attesting to conflicting versions of what occurred prior to, contemporaneous with, and subsequent to the consummation of the agreement. It is clear from these affidavits that there are issues of fact to be tried in this case concerning the proper interpretation of the contract, thus making the matter unsuitable for summary judgment. It is not the province of a court, on a motion for summary judgment, to try the issues presented, but merely to demonstrate

*Painton & Company v. Bourns, Inc.,* 442 F.2d 216 (2d Cir.1971).

The defendant Moore bases her motion for summary judgment on *Midland Container Corp. v. Sophia Realty,* 65 A.D.2d 784, 410 N.Y.S.2d 638 (App.Div., 2d Dep't 1978)[3], in which the court held that the dissolution of a corporate lessor and distribution of its realty to a partnership comprised of shareholders did not constitute a "sale", and therefore did not trigger the lessee's option to purchase. It is argued that under *Midland,* the distribution of the realty from Kingston to Moore does not trigger Section 6(b) of the lease.

Saw Mill points out that the lease provision in *Midland* triggered the lessee's option to purchase only upon a "sale", while the lease provision here triggers Saw Mill's option to purchase if the landlord desires to "sell, transfer or otherwise convey" an interest in the realty. Saw Mill argues that although the distribution of title to Moore may not qualify as a sale, it does fall within the plain meaning of the language of the lease as a "transfer or conveyance", thus triggering Saw Mill's right of first refusal, and entitling it to summary judgment.

Saw Mill is correct in its position that the decision in *Midland* is not controlling here, as the facts in that case are distinguishable from those here. However, Saw Mill does not dispute that the issue of Kingston's dissolution was discussed during negotiations leading up to the agreement, and Moore's affidavits clearly raise an issue of fact as to whether Saw Mill understood that this dissolution would not trigger the right-of-first refusal, and whether the agreement reflects this understanding, thus making summary judgment inappropriate.

The motions for summary judgment are both denied.

3. *Motions for Deposits of Rent into Court*

 Saw Mill seeks an order pursuant to Fed.R.Civ.P. 67 permitting it to deposit

whether such issues exist. *Fournier v. Canadian Pacific Railroad,* 512 F.2d 317, 319 (2d Cir. 1975).

rents with the court instead of with Moore. Had Saw Mill shown that it is likely to prevail on the merits, such relief might be proper, but the present record does not support such a conclusion. Saw Mill has not presented any evidence which would justify denying Moore of rent payments pendente lite. Furthermore, if Saw Mill prevails in this action, the rent it paid during the pendency of this suit may well be creditable against the purchase price. For these reasons, the motion for deposits of rent into court is denied.

The plaintiff's motions for entry of a default, and for an order granting it leave to deposit rent money into court are denied. The cross-motions for summary judgment are denied. The defendant's motion for leave to amend her complaint is granted.

It is so ordered.

3. This diversity action concerns a contract made in New York involving property situated in New York. The parties agree that New York law applies.